(59 App. Div. 159.)

### In re MATHEWS et al.

(Supreme Court, Appellate Division, Second Department. March 8, 1901.)

1. MUNICIPAL CORPORATIONS—DIMINISHING BOUNDARIES—COMMITTEE—REPORT —ADOPTION—EFFECT—ORDINANCE—NECESSITY.

Laws 1871, c. 870, § 33, provides that the board of county supervisors may diminish the boundaries of any incorporated village in the county, on petition, by a vote of a majority of all the supervisors elected, provided that no act, ordinance, or resolution for such purpose shall be valid and

operative unless it receives the affirmative vote of the supervisors or supervisor, if any, of such village. A petition in compliance with the statute was presented to the board of supervisors, and referred to the judiciary committee, which presented a report, and an act recommending that the petition be granted, which were laid over, and subsequently both were withdrawn. Later the committee again reported in favor of granting the petition, which report was adopted; but no act, ordinance, or resolution diminishing the boundaries was passed. *Held*, that the boundaries were not diminished thereby.

:2. SAME—SUPERVISOR—VETO.

Where a village had no supervisor or similar officer in the county board of supervisors, the failure of the supervisor of the town in which the village was located to vote in favor of the report that a petition to diminish the village boundaries be granted was an effective veto of the report, within Laws 1871, c. 870, § 33, providing that no act, ordinance, or resolution for the purpose of diminishing the boundaries of a village shall be valid unless it receive the affirmative vote of the supervisor, if any, of such village.

Appeal from special term, Kings county.

Application by George T. Mathews and others for a writ of certiorari to review an assessment. From an order dismissing the writ after return, applicants appeal. Affirmed.

Argued before GOODRICH, P. J., and WOODWARD, HIRSCHBERG, JENKS, and SEWELL, JJ.

Frank A. Irish, for appellants.

A. J. Adams, for respondents.

JENKS, J. Mr. Mathews obtained a writ of certiorari to review an assessment upon his realty made in 1890 by the trustees of the village of Mt. Kisco, acting as the assessors thereof. After return thereto, the special term (Mr. Justice Dickey presiding) dismissed the writ, and from the order of dismissal this appeal is taken. By stipulation the sole question before this court is whether the realty is included in the limits of that village as established by law.

Mt. Kisco was incorporated pursuant to the general law (chapter -291, Laws 1870) and the acts amendatory thereof. The appellant concedes that prior to January, 1881, the land in question was included in the village limits, but contends that the lands were thereafter excluded by the action of the board of supervisors, pursuant to section 33, c. 870, Laws 1871, whereby the limits of the village were diminished. This section, so far as it relates to the power to diminish the boundaries, provides:

"And the said board of supervisors are also authorized and empowered to diminish the boundaries of any incorporated village within their respective counties, so as to exclude from such incorporation any portion of the territory embraced therein, upon the petition of two thirds of the electors resident within the portion of territory sought to be so excluded, who shall be liable to be assessed for the ordinary and extraordinary expenditures of such village, by a vote of a majority of all the supervisors elected, to be taken by yeas and nays: provided that no act, ordinance or resolution for such purpose shall be valid and operative unless it shall receive the affirmative vote of the supervisors or supervisor, if any, of such village."

The petition shows, by excerpt from the journal of the board of supervisors: That on January 5, 1881, the chair presented a peti-

tion from residents of Mt. Kisco for change in the boundary line, which was referred to the committee on judiciary. That on January 17, 1881, Mr. Taylor presented a supplemental petition, which was likewise referred, and that on January 18, 1881, Mr. Banta, from the judiciary committee, presented a report, and an act whereby that committee reported that they had examined into the matter referred to in the petition, and that the same complied with the said statute; that, there being no opposition to the application, they recommended that the prayer of the petitioners be granted; and that they submitted said act to the board. The act was entitled:

"An act to diminish the boundary line in the town of New Castle, county of Westchester, passed by the board of supervisors January, 1881, a majority of all the members elected to such board together with the supervisors of said town voting in its favor.

"The board of supervisors of Westchester county, by virtue of the power and authority conferred upon it by section 33, chapter 870 of the Laws of 1871, do enact as follows:"

Then follow three sections, duly diminishing by definite lines the bounds of the said village. The report and the act were laid over. On January 24, 1881, Mr. Banta, from committee on judiciary, asked leave to withdraw the report and act changing the boundary line of the village of Mt. Kisco, which was granted, and the report was withdrawn. On January 26, 1881, Mr. Banta, from the judiciary committee, reported that the committee to whom was referred the petition to alter or change the boundary lines of the village of Mt. Kisco, in the town of New Castle and Bedford, so as to diminish the same as set forth in said petition, "which petition is herewith presented," had examined into the matter mentioned in the said petition, and that the same complied with the statutes of 1871, c. 870, § 33. "They would recommend that the prayer of the petitioners be granted." The question was then taken "on the adoption of the report," with the following result: "Ayes [names detailed], 16; nays, none. The supervisor of the town of Bedford not voting in the affirmative, the chair declared the report not adopted."

Thus it appears from the official record that the petition was first presented, referred to the committee on judiciary, which made a favorable report, accompanied by a proposed act, which report and act were laid over, and that thereupon such report and act were withdrawn. Thereafter the committee made a new report, and recommended that the prayer be granted, and this report was adopted by a majority vote; but the chair, for the reason that the supervisor of Bedford did not vote in the affirmative, declared the report not adopted. Putting aside for the moment the failure of the said supervisor to vote, and the declaration of the chair, the most that can be claimed by the appellant is that the board adopted the report of the committee. This presents the question whether such action has diminished the boundaries of the village. I think that the terms of the statute require the passage of an act, ordinance, or resolution, and that the mere adoption of this report of the committee does not satisfy the statute. The report recommended that the petition be granted, and the adoption of the report is but the formal expression of the board that the peti-

tion should be granted. It remained for the board to grant the petition in the form required by statute, namely, by act, ordinance, or resolution, and this was not done. No act, ordinance, or resolution accompanied the report; nor was there then before the board any such form of legislation. The first report and act presented therewith had been withdrawn, and thereby the report was recommitted to the judiciary committee, was not before the board, and hence the whole question upon the petition was again in that committee, as if nothing had been done. Cush. Man. § 291; Rob. Rules of Order, 31. The learned counsel for the appellant cites section 295 of Cushing's Manual as an authority for the proposition that the adoption of this report was tantamount to the passage of a resolution diminishing the boundaries. That section reads:

"The final question on a report, whatever form it may have, is usually stated on its acceptance; and, when accepted, the whole report is adopted by the assembly, and becomes the statement, reasoning, opinion, resolution, or other act, as the case may be, of the assembly; the doings of a committee, when agreed to, adopted, or accepted, becoming the acts of the assembly, in the same manner as if done originally by the assembly itself, without the intervention of a committee."

But section 292 reads:

"The report of a committee may be made in three different forms, namely: First, it may contain merely a statement of facts, reasoning, or opinion in relation to the subject of it, without any specific conclusion; or, second, a statement of facts, reasoning, or opinion, concluding with a resolution or series of resolutions, or some other specific proposition; or, third, it may consist merely of such resolutions or propositions, without any introductory part."

The rule laid down in section 295, that when the report is accepted it is adopted, and "becomes the statement, reasoning, opinion, resolution, or other act, as the case may be, of the assembly," is simply, as the text proceeds to state, a declaration that what the committee has done the assembly adopts, and must be applied by reference to the contents of the report. If the committee's report merely contains a "statement of facts, reasoning, or opinion in relation to the subject, without any specific conclusion" (section 292, supra), then the acceptance or the adoption of the report is but the adoption of such opinion. The author defines "specific conclusion" by the statement in section 292, already quoted, when he says, in describing the different forms of report: "Second, * * * concluding with a resolution or series of resolutions, or some other specific proposition." This report was of the first form described in section 292, and was simply the opinion of the committee that the "prayer of the petitioners should be granted," and the acceptance of the report was but the adoption of the opinion of the committee that the petition should be granted. The learned counsel for the appellant further cites section 31 of Robert's Rules of Order; but section 29 provides:

"The report of a committee should generally close or be accompanied with formal resolutions, covering all its recommendations, so that the adopting of their report (section 31) would have the effect to adopt all the resolutions necessary to carry out their recommendations. * * *"

And the author adds in a note:

"If the report of the committee were written in this form, 'Your committee think that the conduct of Mr. A at the last meeting so disgraceful that they recommend that he be expelled from the society,' the adoption of the report would not have the effect to expel the member."

Section 31, cited by the learned counsel, reads, in part:

"When the assembly is to consider a report, if it has not already been done, a motion should be made to 'adopt,' 'accept,' or 'agree to' the report, all of which, when carried, have the same effect, namely, to make the doings of the committee become the acts of the assembly, the same as if done by the assembly without the intervention of a committee; and, therefore, if the report contains formal resolutions, it adopts the resolutions."

As I have stated, I think that the report was simply a recommendation that the board should grant the prayer of the petitioners, and that the adoption of the report, unaccompanied by act, ordinance, or resolution, was not the legal equivalent to passing the formal act, ordinance or resolution required by the statute. There should have followed some act, ordinance, or resolution such as was originally submitted with the first report, but finally withdrawn and never reported, excluding the territory, and definitely stating the new boundary lines thereby established. For these reasons, I think that there was no legal action of the board diminishing the boundary lines of said village.

It is contended that the omission of the supervisor of the town of Bedford to vote in the affirmative was not the veto action contemplated by the statute, inasmuch as it reads that "no act, ordinance or resolution for such purpose shall be valid and operative unless it shall receive the affirmative vote of the supervisor or supervisors, if any, of such village." Such contention necessarily concedes that this part of the statute has no meaning, inasmuch as there is no "supervisor of the village" provided for by law. The suggestion is made that the intent of the legislature was that, if there ever should be such an officer, then his approval would be essential, or that the provision was thus worded lest there should be such an officer in one of the many special charters of villages throughout the state. But it is not to be assumed that legislation was wholly meaningless, unless considered as enacted for the remote contingency that there should at some time be such an office created by the statute, but not then required in the scheme of village government, while the second suggestion is answered by the fact that this provision simply relates to villages incorporated under the general act. People v. Mabie, 142 N. Y. 343, 37 N. E. 115. Thus the provision in question appears in a general act, then complete, relating to villages, which did not provide for or require any such officer as a supervisor of a village, eo nomine. Moreover, the plain purpose of the act was to commit such power, as to villages then or thereafter incorporated under the general law, to the county boards of supervisors. People v. Mabie, supra. In express terms the section requires the affirmative vote in such board by a supervisor, who was described as of "such village." Now, the board of supervisors of the county was constituted of the supervisors of the cities and towns (1 Rev. St. p. 366, § 1), and, therefore, if the

provision have any meaning, it must refer to some such supervisor in the board entitled to vote. Further, the intent of this provision was to permit some such supervisor to veto, in effect, such action. Such quasi veto power would naturally be lodged in him who directly represented the territory to be affected, and hence in that supervisor who, though he was elected from a town, nevertheless represented the territory affected by the resolution. Now, the land in question was situated in the town of Bedford, and therefore the supervisor of that town was within the sense of the statute, if it is to be given any practical life and force. Section 1 of the general act (Laws 1870, c. 291) provides, "Any part of any town or towns, not in any incorporated village, * * * may be incorporated as a village as under the provisions of this act," etc. I think that the expression of the statute may be held as intended to describe the supervisor within whose territory lay the village to be affected by the proposed legislation. I am permitted "to interpret doubtful or obscure phrases and imperfect language in a statute so as to give effect to the presumed intention of the legislature, and to carry out what appears to be the general policy of the law." McKuskie v. Hendrickson, 128 N. Y. 555, 558, 28 N. E. 650. And the practical question is whether the purpose of the legislature, that some member of the board of supervisors of the county who represented the territory in question must assent to the proposed change, by his vote, before it could be effective, must fail, in that words which, though in part properly described and indicated such a member, in part inaccurately designated him as "of a village." It should not be assumed that the legislature intended to make such provision meaningless and absurd by a deliberate misdescription in part of an official title.

I think that the learned special term was right, and that the order must be affirmed, with costs. All concur, except SEWELL, J., taking no part.